# THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GYL COLE, et al., | : |
| Plaintiffs, | : |
| V. | : 3:16-CV-1959 |
| | : (JUDGE MARIANI) |
| CAMELBACK MOUNTAIN SKI RESORT, et al., | : |
| Defendants. | : |

## MEMORANDUM OPINION

This matter presents the following question to the Court: Does a plaintiff state a cause of action for violation of the New Jersey Consumer Fraud Act when he or she alleges that a Pennsylvania ski resort advertised its business in New Jersey but failed to include any information in its advertisements regarding the protections from tort liability the business enjoyed under Pennsylvania law? For the reasons that follow, the Court finds that such a claim is not cognizable under the New Jersey Consumer Fraud Act.

### I. INTRODUCTION AND PROCEDURAL HISTORY

The above captioned matter was first removed from the Superior Court of New Jersey, (Doc. 1), and then transferred by the District Court for the District of New Jersey to this Court, (Docs. 10). Plaintiffs, Gyl and Ronald Cole, represented by counsel, bring a two count Complaint against Camelback Mountain Ski Resort ("Camelback"), and two John Doe maintenance companies, (Doc. 1-1), concerning injuries that Gyl Cole sustained while skiing at Defendant Camelback's skiing facility. Plaintiffs, both residents of New Jersey, allege

that Defendants are liable both for negligence (Count I), and for violation of the New Jersey Consumer Fraud Act, N.J. STAT. ANN. § 56:8-2, (Count II). Defendant Camelback now moves to dismiss Count II of Plaintiffs' Complaint. (Doc. 20).

## II. FACTUAL ALLEGATIONS

Plaintiffs' Complaint alleges the following facts:

Plaintiffs, Gyl and Ronald Cole, are husband and wife and reside in Waretown, New Jersey. (Doc. 1-1). Camelback is a snow skiing resort facility located in Pennsylvania. (*Id.* at ¶ 14). According to Plaintiffs' Complaint, Camelback advertises its business heavily in New Jersey through a variety of forms of media. (*Id.*). Camelback's advertisements, however, contain no information that, under Pennsylvania law, skiing facilities enjoy "immunity" from liability for the injuries patrons sustain while skiing. (*Id.*). On March 15, 2014, presumably after viewing one of Camelback's advertisements, Gyl and Ronald Cole went skiing at Camelback's skiing facility. (*Id.* at ¶¶ 1, 3-4). While skiing on one of the black diamond slopes, Gyl Cole slammed into a six inch metal pipe and sustained severe injuries. (*Id.* at ¶ 3).

## III. STANDARD OF REVIEW

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

2

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (internal citations and alterations omitted). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231 n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

> *Twombly* and *Iqbal* require [a court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950 (internal citations and

3

quotation marks omitted). This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

### IV. ANALYSIS

Count II of Plaintiffs' Complaint alleges a violation of the New Jersey Consumer Fraud Act ("NJCFA"). (Doc. 1-1 at ¶¶ 13-22). The NJCFA was enacted to address "sharp practices and dealings in the marketing of merchandise[1] and real estate whereby the consumer could be victimized by being lured into a purchase through fraudulent, deceptive or other similar kind of selling or advertising practices." *Daaleman v. Elizabethtown Gas Co.*, 390 A.2d 566, 569 (N.J. 1978). "The Act creates a private cause of action, but only for victims of consumer fraud who have suffered an ascertainable loss." *Weinberg v. Sprint Corp.*, 801 A.2d 281, 291 (N.J. 2002).

"A consumer who can prove (1) an unlawful practice, (2) an ascertainable loss, and (3) a causal relationship between the unlawful conduct and the ascertainable loss, is entitled to legal and/or equitable relief, treble damages, and reasonable attorneys' fees." *Gonzalez v. Wilshire Credit Corp.*, 25 A.3d 1103, 1115 (N.J. 2011) (quotation marks omitted). Unlawful practices include

> [t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment,

---

[1] Under the NJCFA, the term "merchandise" is broadly defined to "include any objects, wares, goods, commodities, services or anything offered, directly or indirectly to the public for sale." N.J. STAT. ANN. § 56:8-1

4

suppression or omission, in connection with the sale or advertisement of any merchandise or real estate . . .

N.J. STAT. ANN. § 56:8-2. The New Jersey Supreme Court has specified that "[u]nlawful practices fall into three general categories: affirmative acts, knowing omissions, and regulation violations." *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462 (N.J. 1994).

In the case at hand, Plaintiffs assert that the unlawful practice that Defendant Camelback allegedly engaged in was a failure to inform, i.e., an omission. (Doc. 1-1 at ¶ 14; Doc. 29 at 4). Under the NJCFA, an omission is actionable "where the defendant (1) knowingly concealed (2) a material fact (3) with the intention that the consumer rely upon the concealment." *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 297 (D.N.J. 2009). "Implicit in the showing of an omission is the underlying duty on the part of the defendant to disclose what he concealed to induce the purchase." *Id.*

Plaintiffs' Complaint alleges that Defendant Camelback failed to include any information in its advertisements with respect to the protections from tort liability it enjoyed under Pennsylvania law. Specifically, Plaintiffs' Complaint alleges the following:

> Camelback knew that their [sic] advertising heavily in New Jersey induced New Jersey residents to attend Camelbacks [sic] site in Pennsylvania. Camelback knew that it had immunity granted to it through the legislation passed by the Pennsylvania Legislature but at no time did Camelback ever tell New Jersey residences [sic] that if they utilize the services of Camelback that they would be subject to the immunity clause granted to Camelback. Knowing full well that they [sic] had this immunity, Camelback elected not to notify any of the invitees to their [sic] site about the immunity.

5

(Doc. 1-1 at ¶ 14).[2] Defendant Camelback argues that this is insufficient to state a claim under NJCFA. (Doc. 22 at 7). Plaintiffs respond that they have adequately pleaded that "Camelback knew and should have advised the skiing public [through its advertisements] . . . that if they utilize the services of Camelback that they would be subject to the immunity clause granted to Camelback by the Pennsylvania Legislature." (Doc. 29 at 4).

The inaptly described "immunity clause" Plaintiffs refer to is no doubt the Pennsylvania Skier's Responsibility Act, 42 Pa. C.S. § 7102(c). The Act states:

> (c) Downhill skiing.--
>
> (1) The General Assembly finds that the sport of downhill skiing is practiced by a large number of citizens of this Commonwealth and also attracts to this Commonwealth large numbers of nonresidents significantly contributing to the economy of this Commonwealth. It is recognized that as in some other sports, there are inherent risks in the sport of downhill skiing.
>
> (2) The doctrine of voluntary assumption of risk as it applies to downhill skiing injuries and damages is not modified by [42 Pa. C.S. § 7102(a)-(a.1)]

42 Pa. C.S. § 7102. The Pennsylvania Supreme Court has made clear that "the Act did not create a new or special defense for the exclusive use of ski resorts, but instead kept in place longstanding principles of common law." *Chepkevich v. Hidden Valley Resort, L.P.*, 2 A.3d 1174, 1186 (Pa. 2010). The common law in which the Act preserves, the doctrine of

---

[2] Additionally, and somewhat confusingly, the Complaint also alleges that "Camelback misrepresented to the New Jersey residents at large through its media blitz that the New Jersey residences [sic] can use Camelback facilities for snow skiing." (Doc. 1-1 at ¶ 17). This singular statement is in stark contrast with the rest of the Complaint which alleges that Plaintiffs, both residents of New Jersey, did in fact engage in snow skiing at Camelback.

6

voluntary assumption of risk, "has also been described as a 'no-duty' rule, *i.e.*, as the principle that an owner or operator of a place of amusement has no duty to protect the user from any hazards inherent in the activity." *Id.* In Pennsylvania, "this 'no-duty' rule applies to the operators of ski resorts, so that ski resorts have no duty to protect skiers from risks that are 'common, frequent, and expected,' and thus 'inherent' to the sport of downhill skiing." *Id.*

Thus, the Court arrives at the question of whether Plaintiffs' state a claim under the NJCFA when they allege that Defendant Camelback advertised its Pennsylvania skiing facility to New Jersey residents but failed to include a disclaimer with respect to the Pennsylvania Skier's Responsibility Act or the common law doctrine of voluntary assumption of risk. As this is a question of New Jersey state law, this Court must turn to the decisions of that state's courts for an answer. *U.S. Underwriters Ins. Co. v. Liberty Mut. Ins. Co.*, 80 F.3d 90, 93 (3d Cir. 1996). The parties have not directed the Court to any New Jersey case—and the Court's own research did not uncover any—that squarely addresses this issue. Nor have New Jersey courts apparently addressed the analogous issue of whether, under the NJCFA, advertisers are ever obliged to educate the public on the law applicable to their product absent other specific authority requiring such disclosures. Accordingly, it falls to this Court to predict how the highest tribunal in New Jersey would rule on the matter. *Id.* For the following reasons, this Court predicts that the New Jersey Supreme Court would find that such a claim is not cognizable under the NJCFA.

First, this is simply not the type of omission contemplated by the NJCFA. The Court is cognizant of the fact the NJCFA "is intended to be applied broadly in order to accomplish its remedial purpose, namely, to root out consumer fraud, and therefore to be liberally construed in favor of the consumer." *Gonzalez*, 25 A.3d at 1115 (internal citations and quotation marks omitted). Additionally, the Court is aware that "[t]he statutory and regulatory scheme is . . . designed to promote the disclosure of relevant information to enable the consumer to make intelligent decisions in the selection of products and services." *Div. of Consumer Affairs v. Gen. Elec. Co.*, 582 A.2d 831, 833 (N.J. Super. Ct. App. Div. 1990). Nevertheless, the NJCFA has limits. To qualify as an unlawful practice under the NJCFA, "[t]he practice must be misleading and outside the norm of a reasonable business practice." *Hughes v. TD Bank, N.A.*, 856 F. Supp. 2d 673, 680 (D.N.J. 2012); *see also Miller v. Bank of Am. Home Loan Servicing, L.P.*, 110 A.3d 137, 144 (N.J. Super. Ct. App. Div. 2015). Indeed, the "advertisement must have 'the capacity to mislead the average consumer'" in order for it to be actionable. *Adamson v. Ortho-McNeil Pharm., Inc.*, 463 F. Supp. 2d 496, 501 (D.N.J. 2006) (quoting *Union Ink Co., Inc. v. AT&T Corp.*, 801 A.2d 361, 379 (N.J. Super. Ct. App. Div. 2002)). Finally, the omission must concern a material fact. *Arcand*, 673 F. Supp. 2d at 297. The alleged omission in this case, however, is not one of fact, is not misleading, and does not fall outside the norm of reasonable business practices.

Plaintiffs' allege that Defendant Camelback failed to provide information in its advertisements concerning the Pennsylvania Skier's Responsibility Act and the common

8

law doctrine of voluntary assumption of risk. Initially, as omissions of law, these allegations fall outside of the statutory language of the NJCFA. Additionally, the type or nature of legal defenses to liability which a business may assert in the event of a lawsuit is not information normally included in an advertisement, as both parties have equal access to that information. Consequently, Defendant Camelback's alleged failure to include such information does not imply its nonexistence and is therefore not misleading nor outside of the norm of a reasonable business practice. As such, omissions of this type are not actionable under the NJCFA.

Second, a finding that Plaintiffs' claim was cognizable under the NJCFA would run counter to a well-known legal maxim: "[a]ll citizens are presumptively charged with knowledge of the law." *Atkins v. Parker*, 472 U.S. 115, 130, 105 S. Ct. 2520, 86 L. Ed. 2d 81 (1985); *see also Gilmore v. Taylor*, 508 U.S. 333, 360, 113 S. Ct. 2112, 124 L. Ed. 2d 306 (1993) ("[A] citizen . . . is presumed to know the law . . . ."); *Anela v. City of Wildwood*, 790 F.2d 1063, 1067 (3d Cir. 1986) ("Private citizens are presumed to know the law . . . ."); *State v. Moran*, 997 A.2d 210, 216 (N.J. 2010) ("Every person is presumed to know the law."); *Maeker v. Ross*, 99 A.3d 795, 802 (N.J. 2014) ("[E]veryone is presumed to know the law . . . ."); *Widmer v. Mahwah Twp.*, 376 A.2d 567, 569 (N.J. Super. Ct. App. Div. 1977) ("[T]he principle is well established that every person is conclusively presumed to know the law, statutory and otherwise."); *cf. Commonwealth v. McBryde*, 909 A.2d 835, 838 (Pa. Super. Ct. 2006) ("[E]veryone is presumed to know the law; an out-of-state driver is not

absolved from following the laws of this Commonwealth or any other state in which he or she chooses to drive."). Thus, as a matter of law, Defendant Camelback's advertisement did not have the capacity to mislead because the law presumes that Plaintiffs—and everyone else for that matter—already knew the information Defendant Camelback allegedly omitted. Stated otherwise, the law should not obligate Defendant Camelback to inform its prospective customers of what they already know.[3]

Finally, if this Court were to come to the opposite conclusion, businesses would have almost unending liability. For example, a Pennsylvania retailer may be liable under the NJCFA if it advertised its clothing outlet to New Jersey residents but failed to include a disclaimer stating that a customer injured at the store by an employee's negligence may have his or her recovery reduced if the shopper was also negligent. See 42 Pa. C.S. § 7102(a) ("[A]ny damages sustained by the plaintiff shall be diminished in proportion to the amount of negligence attributed to the plaintiff."). Or a marketer of a curling iron may be liable under the NJCFA for failing to disclose to consumers that, even if they are injured due to a design flaw in the product, the users may not be able to recover for their injuries if "there was no reasonable alternative design" for the curling iron at the time of manufacturing. See Cavanaugh v. Skil Corp., 751 A.2d 518, 520 (N.J. 2000) (quotation marks omitted); see also N.J. STAT. ANN. § 2A:58C-3a(1). Indeed, the number of relevant

---

[3] The Court, however, may have come to a different conclusion had Plaintiffs alleged that Defendant Camelback made an affirmative misrepresentation of the law in its advertisements. Nevertheless, such a situation is not presently before this Court.

10

legal concept that a business "omitted" from its advertisement would only be limited by the creativity and imagination of the lawyers involved.

## V. CONCLUSION

For the reasons outlined above, this Court will grant Defendant Camelback Mountain Ski Resort's Motion to Dismiss Plaintiffs' claim for violation of the New Jersey Consumer Fraud Act, (Doc. 20). A separate Order follows.

Robert D. Mariani
United States District Judge