# THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

GYL COLE, et al., :
:
        Plaintiffs, :
V. : 3:16-CV-1959
: (JUDGE MARIANI)
CAMELBACK MOUNTAIN SKI :
RESORT, et al., :
:
        Defendants. :

## MEMORANDUM OPINION

### I. INTRODUCTION AND PROCEDURAL HISTORY

The above captioned matter stems from a skiing accident that occurred on March 15, 2014. Plaintiffs, Gyl and Ronald Cole, represented by counsel, filed a two count Complaint against Camelback Mountain Ski Resort ("Camelback"), and two John Doe maintenance companies concerning injuries that Plaintiff Gyl Cole sustained while skiing at Defendant Camelback's skiing facility. (Doc. 1-1). Plaintiffs' Complaint alleged that Defendant Camelback is liable both for negligence (Count I), and for violation of the New Jersey Consumer Fraud Act, N.J. STAT. ANN. § 56:8-2, (Count II). By Memorandum and Order dated June 28, 2017, this Court dismissed Count II of the Complaint, leaving only a claim of negligence pending. (Docs. 33, 34). Defendant Camelback now moves for summary judgment on this remaining claim. (Doc. 35). For the reasons that follow, this Court will grant Defendant Camelback's Motion for Summary Judgment.

## II. STATEMENT OF UNDISPUTED FACTS

Before delving into the facts of this case, the Court must address a preliminary matter. Local Rule 56.1 of this Court provides that

> A motion for summary judgment filed pursuant to Fed.R.Civ.P.56, shall be accompanied by a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried.
>
> The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the statement required in the foregoing paragraph, as to which it is contended that there exists a genuine issue to be tried.
>
> Statements of material facts in support of, or in opposition to, a motion shall include references to the parts of the record that support the statements.
>
> All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.

In accordance with this rule, in addition to submitting a Brief, (Doc. 36), Defendant Camelback submitted a Statement of Material Facts in Support of Summary Judgment, (Doc. 37). Initially, Plaintiffs submitted a Brief in Opposition, (Doc. 38), which did not contain a response to Defendant Camelback's Statement of Material Facts. Nevertheless, an additional document accompanying Plaintiffs' Brief in Opposition appeared to request an extension of discovery deadlines to allow Plaintiffs to depose two additional witnesses. (Doc. 38 at 2-4).

By Order dated August 10, 2017, the Court granted Plaintiffs' Motion and stated that "all remaining depositions shall be taken on or before September 20, 2017, and Plaintiffs are granted leave to refile their Brief in Opposition to Defendant Camelback's Motion for Summary Judgment on or before that date." (Doc. 39). The Court further ordered that "all future filings with this Court shall be in **strict compliance** with the Middle District of Pennsylvania's Local Rules." (*Id.*). On October 3, 2017, almost two weeks after Plaintiffs' deadline to file a new brief expired, Plaintiffs filed a "Supplemental Letter Brief." (Doc. 40). The Letter Brief, however, also failed to contain a response to Defendant Camelback's Statement of Material Facts. Accordingly, because Plaintiffs have failed to respond to Defendant Camelback's Statement of Material Facts, all of those facts are now deemed admitted pursuant to Local Rule 56.1. With that in mind, the following facts are admitted:

On March 14, 2014, Plaintiff Gyl Cole was skiing at Camelback Mountain Ski Resort in Tannersville, Pennsylvania, with her husband, Plaintiff Ronald Cole. (Doc. 37 at ¶¶ 1-2, 9; Dep. of Gyl Cole, Doc. 37-1 at 31). Plaintiff Gyl Cole was an experienced skier and knew that it was her responsibility to remain in control and stay on the trail. (Doc. 37 at ¶ 5). While skiing on a black diamond slope, Plaintiff Gyl Cole skied off the trail and ran into a fence. (*Id.* at ¶¶ 8-10; Dep. of Gyl Cole, Doc. 37-1 at 39).

### III. STANDARD OF REVIEW

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "As to materiality,

3

. . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW,*

Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992), cert. denied 507 U.S. 912, 113 S. Ct. 1262, 122 L. Ed. 2d 659 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

Id. (internal quotations, citations, and alterations omitted).

### IV. ANALYSIS

Defendant Camelback argues that Plaintiffs' negligence claim is barred by the assumption of the risk doctrine as preserved by the Skier's Responsibility Act, 42 Pa. C.S. § 7102(c). (Doc. 36 at 4-6). Plaintiffs argue (1) that Defendant Camelback's failure to maintain the padding on the fence post that Plaintiff Gyl Cole collided with renders the assumption of the risk doctrine inapplicable because Defendant Camelback assumed a duty to maintain the safety equipment they provided, and (2) Plaintiff Gyl Cole was not

specifically aware of the risk of running into a fence post with deteriorating padding. (Doc. 38 at 9-15).

"[T]he common law doctrine of assumption of risk prevented recovery when a plaintiff was deemed to have assumed the risk of a known danger." *Monk v. V.I. Water & Power Auth.*, 53 F.3d 1381, 1384 (3d Cir. 1995); *see also* RESTATEMENT (SECOND) OF TORTS § 496A ("A plaintiff who voluntarily assumes a risk of harm arising from the negligent or reckless conduct of the defendant cannot recover for such harm."). In Pennsylvania, "the doctrine of assumption of the risk was largely eliminated . . . when the General Assembly enacted the Comparative Negligence Act in 1987." *Chepkevich v. Hidden Valley Resort, L.P.*, 2 A.3d 1174, 1185 (Pa. 2010). Nevertheless, an exception to this rule was soon carved out by the Skier's Responsibility Act, 42 Pa. C.S. § 7102(c). The Act provides:

> **(c) Downhill skiing.--**
>
> (1) The General Assembly finds that the sport of downhill skiing is practiced by a large number of citizens of this Commonwealth and also attracts to this Commonwealth large numbers of nonresidents significantly contributing to the economy of this Commonwealth. It is recognized that as in some other sports, there are inherent risks in the sport of downhill skiing.
>
> (2) The doctrine of voluntary assumption of risk as it applies to downhill skiing injuries and damages is not modified by [the Comparative Negligence Act].

42 Pa. C.S. § 7102.

"The Pennsylvania Supreme Court has interpreted this 'Skier's Responsibility Act' to mean that, as a matter of law, a ski resort owes no duty of care to a skier for any of the

6

'inherent risks' of downhill skiing." *Bjorgung v. Whitetail Resort, LP*, 550 F.3d 263, 268 (3d Cir. 2008). "Where there is no duty, there can be no negligence, and thus when inherent risks are involved, negligence principles are irrelevant—the Comparative Negligence Act is inapplicable—and there can be no recovery based on allegations of negligence." *Chepkevich*, 2 A.3d at 1186.

"[T]o determine whether a plaintiff was subject to the assumption of the risk doctrine adopted in the Skier's Responsibility Act," this Court must perform a two-part analysis. *Barillari v. Ski Shawnee, Inc.*, 986 F. Supp. 2d 555, 560 (M.D. Pa. 2013). "First, this Court must determine whether [the plaintiff] was engaged in the sport of downhill skiing at the time of her injury." *Hughes v. Seven Springs Farm, Inc.*, 762 A.2d 339, 344 (Pa. 2000). Second, this Court must decide "whether the injury arose out of a risk inherent to the sport of skiing." *Chepkevich*, 2 A.3d at 1186. "If both of these prerequisites are met, then summary judgment is appropriate because, as a matter of law, the Defendant would have had no duty to" Plaintiffs. *Barillari*, 986 F. Supp. 2d at 560.

Here, there appears to be no dispute that Plaintiff Gyl Cole was engaged in the sport of downhill skiing at the time she was injured. Indeed, Plaintiffs' Complaint states that "[w]hile skiing on the Black Diamond Slope, Gyl Cole ("Cole") ended up slamming into a six inch metal pipe." (Doc. 1-1 at ¶ 3). Thus, the Court moves on to the question of whether skiing into a fence post is an inherent risk in the sport of skiing.

"Inherent risks" are those "risks that are 'common, frequent, and expected'" in the sport of downhill skiing. *Chepkevich*, 2 A.3d at 1186 (quoting *Hughes*, 762 A.2d at 343-44). "[T]he clear legislative intent to preserve the assumption of the risk doctrine in this particular area, as well as the broad wording of the Act itself, dictates a practical and logical interpretation of what risks are inherent to the sport." *Id.* at 1187-88. Accordingly, courts have rejected attempts by plaintiffs to define the injury producing risks in very a specific and narrow manner. For example, in *Chepkevich*, a skier, Lori Chepkevich, sued a ski resort after she fell from a ski lift and was injured. *Id.* at 1175-76. She claimed her injury occurred because an employee promised to stop the ski lift briefly while she and a child boarded and then the employee failed to do so. *Id.* The Pennsylvania Supreme Court rejected Chepkevich's argument that she did not assume the "specific risk" that the chair lift operator would fail to stop the lift and the Court instead held that her "action for damages ar[ose] out of the 'general risk' of falling from a ski lift, which is an inherent risk of skiing." *Id.* at 1188.

In the case at hand, Plaintiff Gyl Cole was injured when she skied off a trail and into a fence post. (Doc. 37 at ¶¶ 8-10). Accidentally striking an object while skiing down a slope is unquestionably a common, frequent, and expected risk in the sport of downhill skiing. Indeed, if such a risk was not inherent in the sport, one could hardly imagine what risks would be inherent. Accordingly, the Court holds that Defendant Camelback had no duty to protect Plaintiff Gyl Cole from skiing off the trail and into the fence post, and that, consequently, Plaintiffs' negligence claim fails as a matter of law.

This holding is in accordance with a number of other decisions with analogous facts. In *Smith v. Seven Springs Farm, Inc.*, 716 F.2d 1002 (3d Cir. 1983), the Third Circuit found that a skier assumed the risk of his injuries under Pennsylvania law when he skied down a difficult and icy slope and ultimately collided with an unpadded "telephone-like poles and two nearby snowmaking pipes." *Id.* at 1004-05, 1109. In *Bjorgung v. Whitetail Resort, LP*, 550 F.3d 263 (3d Cir. 2008), the Third Circuit, applying Pennsylvania law, held that a ski resort was entitled to summary judgment when a skier skied off a trail during a slalom race and struck a tree. *Id.* at 265, 269. The plaintiff argued that the risk he encountered was not inherent in the sport because of four conditions: "lack of safety netting; course plotting that directed skiers toward the left side of the trail; improper placement of a course gate; and soft, loose snow 'outside the chemically treated part of the course.'" *Id.* at 269. The Court held that all these risk were inherent in the sport of ski racing and that the ski resort was under no duty "to (1) set netting in all spots where it might prove necessary, and (2) fix a race course in a way that minimizes the potential for the competitors to lose control." *Id.* According to the Court, "[t]o decide otherwise would nullify 42 Pa.C.S.A. § 7102(c) in the context of competitive skiing and replace it with a negligence standard." *Id.*

In *Smith-Wille v. Ski Shawnee Inc.*, 35 Pa. D. & C. 5th 473 (Ct. Com. Pl. 2014), a plaintiff sued a ski resort after crashing into an unpadded fence post on the side of a trail.

*Id.* at 474-75. The Court granted the ski resort's motion for summary judgment, stating that there was

> no duty to warn of the fencing and poles holding the fencing. The fence was located at the edge of the ski trail to prevent skiers from skiing off the trail into woods and/or the chairlift poles. The fencing was made of mesh and was secured to the ground by poles. The fencing also marked the edge of the trail and was notice itself for skiers to stay away from it. The edge of the ski slope, and a support pole for a lift are inherent risks of skiing. Striking a protective fence designating and protecting skiers from the edge of the trail and the chairlift pole is an inherent risk of skiing as well. Therefore, no warning needs to be given.

*Id.* at 484. Finally, in *Glasser v. Seven Springs Mountain Resort*, 6 Pa. D. & C. 5th 25 (Ct. Com. Pl. 2008), a plaintiff sued a ski resort after colliding with a thinly protected snowmaking pole. *Id.* at 26, 28. The Court granted the ski resort's motion for summary judgment, finding that "[p]ursuant to the Pennsylvania Skier's Responsibility Act, 42 Pa.C.S. §7102(c), plaintiff assumed the risk of losing control while he was skiing and consequently colliding with a snowmaking pole. Expressly, the possibility of a collision with a snowmaking pole is a risk inherent to the sport of downhill skiing." *Id.* at 29.

Nevertheless, Plaintiffs attempt to distinguish this line of cases on the basis that all the above cited cases involved a lack of padding or protective equipment. (Doc. 38 at 11-14). Plaintiffs argue that this case is different because Defendant Camelback decided to pad the fence post that Plaintiff Gyl Cole struck. According to Plaintiffs, by initially padding the pole, Defendant Camelback assumed a duty to maintain the padding and then breached that duty by failing to do so. (*Id.* at 10-13; Doc. 40 at 6-10). Viewing the record in a light

10

most favorable to Plaintiffs, the record supports the fact that the fence post that Plaintiff Gyl Cole struck was partially covered in deteriorating padding. The Court, however, does not find this to be a material fact.

As discussed above, colliding with a fence post while skiing is an inherent risk in the sport of downhill skiing.[1] As such, under the assumption of the risk doctrine as preserved by the Pennsylvania Skier's Responsibility Act, Defendant Camelback had no duty to protect Plaintiff Gly Cole from hitting the post. The fact that Defendant Camelback padded the post in question does not somehow create a duty on its part that did not exist previously. *See Glasser*, 6 Pa. D. & C. 5th at 28-29 (no duty to protect skier from colliding with a post covered in inadequate padding). To hold otherwise would encourage ski facilities to avoid erecting any safety measures, as doing so would expose them to liability. The Pennsylvania Skier's Responsibility Act cannot be read to create such perverse incentives.

The Court also rejects Plaintiffs' argument that Plaintiff Gyl Cole did not appreciate the risk of colliding with a pole that was inadequately protected by deteriorating padding. As outlined above, the test to determine whether a skier assumed the risk of a particular injury is a two-part inquiry, "asking first whether the skier was engaged in the sport of downhill skiing at the time of the injury, and second, whether the injury arose out of a risk inherent to the sport of skiing." *Chepkevich*, 2 A.3d at 1186. If both tests are met, Defendant

---

[1] In Plaintiffs' untimely Letter Brief, Plaintiffs argue that the post in question was located on the trail. (Doc. 40 at 9). Ignoring for a moment that Plaintiffs have admitted that the post was located off the trail by failing to respond to Defendant Camelback's Statement of Material Facts, *see* Local Rule 56.1, whether the post was located on or off the trail is immaterial. *See Smith-Wille*, 35 Pa. D. & C. 5th at 484 (holding that hitting a fence post on the edge of a trail is an inherent risk of downhill skiing).

Camelback had no duty to protect Plaintiffs from the risk and summary judgment is appropriate. *Barillari*, 986 F. Supp. 2d at 560. Thus, in the area of skiing, there is no requirement to show that Plaintiffs subjectively appreciated the risk in question so long as the above test is met.

Nevertheless, even if such a showing was necessary, the record shows that Plaintiff Gyl Cole had been skiing since the age of five or six, had taken ski lessons, and was capable of skiing black diamond slopes. (Doc. 37 at ¶ 5). The Court has no trouble concluding that such an advanced skier was aware of the risk that she could lose control and ski into an object.

Accordingly, the Court finds that Plaintiff Gyl Cole assumed the risk associated with her injury and therefore Plaintiffs' claim of negligence must fail as a matter of law.

## V. CONCLUSION

For the reasons outlined above, this Court will grant Defendant Camelback Mountain Ski Resort's Motion for Summary Judgment. A separate Order follows.

Robert D. Mariani
United States District Judge